## MASSACHUSETTS BONDING & INS. CO. v. WINTERS NAT. BANK & TRUST CO. OF DAYTON, OHIO.

No. 9072.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1942.

Clifford R. Curtner and A. K. Meck, both of Dayton, Ohio, for appellant.

Robert E. Cowden, Jr., of Dayton, Ohio (Robert E. Cowden, Jr., and Cowden, Cowden & Crew, all of Dayton, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal involves questions of the appellant's liability on a surety bond given by it to secure the performance by Daniel I. Harshman of his duties as administrator of the estate of Robert Chambers, deceased. Two actions presenting essentially the same issues were instituted, one in the federal court by appellant against appellee as successor administrator, seeking a declaratory judgment; the other, commenced by appellee in the state court, later removed to the federal court on the ground of diversity, was an action on the surety bond. The cases were consolidated and the issues were tried to the court, a jury having been waived.

The District Court rendered judgment against appellant in the amount of $30,-372.58 with interest, which was the same amount that had been determined to be due to the estate from Harshman by the probate court of Montgomery County, Ohio.

The appellant became surety on Harshman's official bond on March 19, 1918. During the course of his administration Harshman filed nine successive accounts in the probate court, the ninth being filed April 9, 1931, and settled June 1, 1931. On May 11, 1937, after admitting that there were discrepancies in his management of the estate, without having filed any other account and during the progress of an action for his removal as administrator, Harshman committed suicide.

Having succeeded as administrator of the Chambers' estate, the appellee secured the appointment of an administrator for Harshman, who filed a tenth and final account on July 10, 1937. Thereupon the appellee and certain beneficiaries of the Chambers' estate filed exceptions to this account as well as to the eighth and ninth accounts, on the ground that Harshman had made unauthorized withdrawals of trust funds, converted them to his own use, and falsified his reports to the court. It was ordered that a copy of the exceptions be served on the appellant and a time was set for a hearing thereon. Appellant filed a demurrer questioning the legal sufficiency of the exceptions and the authority of the court to open up the earlier accounts. The demurrer was overruled and appellant then filed an answer comprising a general denial and plea of limitations and also certain exceptions in its own behalf claiming that the tenth account should be amended to provide a compensation allowance for Harshman's services. Trial of the issues thus joined resulted in a decision which sustained certain of the exceptions filed on behalf of the beneficiaries and overruled appellant's exceptions in their entirety.

From this decision the appellant prosecuted an appeal to the Common Pleas Court of Montgomery County, Ohio, where a trial de novo was had (General Code of Ohio, Section 10501-56 et seq.), and a judgment to substantially the same effect was entered. The appellant appealed to the Court of Appeals of Montgomery County, and the appellee, together with the beneficiaries, filed a cross-appeal. The Court of Appeals affirmed the judgment with certain modifications not material here. In re Estate of Chambers, Ohio App., 36 N.E. 2d 175; Id., Ohio App., 43 N.E.2d 244. Attempts were made by the appellant to secure a review of the case by the Supreme Court of Ohio, both by way of motion to certify and by appeal as of right, but the

appeal was dismissed (136 Ohio St. 202, 24 N.E.2d 601) and the motion to certify was overruled, leaving the judgment of the Common Pleas Court, as modified and affirmed by the Court of Appeals, in full force and effect. In accordance therewith an amended tenth and final account was prepared and filed which was approved, settled and confirmed by the probate court on December 1, 1939. The court found that there was due and owing from Harshman or his estate to the appellee as successor administrator the sum of $30,372.58, with interest on $20,433 thereof at the rate of six per cent per annum from October 1, 1939, until paid, and ordered that settlement be made on that basis.

The District Court decided that appellant was not entitled to declaratory relief and held the decision of the probate court controlling as to the amount of appellant's liability in the present action, and followed its terms in rendering the judgment from which this appeal was taken.

Appellant contends:

(1) That the trial court erred in refusing to grant declaratory relief;

(2) That the action is barred by the applicable statutes of limitation;

(3) That the order of the probate court settling the ninth account of Harshman, administrator, was final, not having been vacated in accordance with statute;

(4) That appellant, not having been a party to the state litigation, is not bound by the judgments in the state court;

(5) That the judgment must be reversed because appellee has split its cause of action against appellant; and

(6) That the surety is liable only for the payment of sums embezzled by Harshman and not liable for the reimbursement of administrator's fees and interest decreed by the probate court.

Upon all these points the judgment of the District Court is correct and must be affirmed. The District Court entertained appellant's prayer for declaratory relief. The complaint sought a determination of the extent of appellant's liability on the surety bond, and this liability was determined by the District Court. A declaratory judgment was entered even though the relief sought was denied.

■ Appellant claims that the instant action is barred under the one year limitation of Section 10506-48, General Code of

Ohio, since the loss was discovered in 1936, when Harshman admitted misappropriation of estate funds, and the action was not brought until December, 1939. Section 10506-47, General Code, the only section to which the limitation of Section 10506-48 is applicable, provides an additional remedy against a fiduciary who makes "any personal use of the funds or property belonging to the trust" for recovery of "any loss occasioned by such use and for such additional amount by way of penalty * * * as may be fixed by the court * * *." The District Court correctly held that since the appellee did not seek a penalty, Sections 10506-47 and 10506-48 were not applicable. The instant action is governed by Section 11226, General Code, which provides that an action on an official bond of an administrator shall be brought within ten years after the cause accrued. There is no contention that ten years have expired. This action was filed some three weeks after the determination of liability by the probate court, and was timely brought.

 Appellant's contention that the order of the probate court settling the ninth account was not vacated in accordance with statute has been decided against it in the state courts, together with many of the issues which appellant seeks to reopen here. Since the controversy there involved the same subject-matter and was between the same parties, that decision is res judicata in this court, and the decision of the state courts upon identical questions is binding upon the federal courts under West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. However, since appellant urges with vehemence that the probate court had no jurisdiction to vacate the order of settlement, we point out here that under the Ohio statute the probate court has plenary jurisdiction "to direct and control the conduct, and settle the accounts of executors and administrators" and that such jurisdiction is "exclusive in the probate court unless otherwise provided by law." Section 10501-53, General Code. Under Section 10506-40, General Code, the probate court had jurisdiction upon settlement of the tenth account to open all former accounts for the purpose of correcting errors therein on condition that such errors did not constitute "matter in dispute" previously determined by the court, and also had juris-

diction to reopen such accounts "in case of fraud." As adjudged by the state courts, there were errors in the ninth account, and it was false and fraudulent. The matters covered by the ninth account were not "in dispute," nor determined by the court as such at the time of its approval. Hence the probate court was authorized to open the ninth account and to vacate its order of settlement which had been secured by fraud. Marks, Gdn. v. Marks, 58 Ohio App. 266, 16 N.E.2d 509, motion to certify overruled, 58 Ohio App. xl; In re Estate of Russell, 60 Ohio App. 385, 21 N.E.2d 604, motion to certify overruled, 60 Ohio App. xliii; In re Estate of Chambers, supra.

The cases relied on by appellant (Errett v. Howert, 78 Ohio St. 109, 84 N.E. 753; Reitz v. Smith (In re Guardianship of Smith), 56 Ohio App. 72, 10 N.E. 150, and Eichelberger v. Gross, 42 Ohio St. 549) have no application here. They relate to the finality of guardian's accounts and procedure for actions by wards with reference thereto, which are governed by totally different statutes, as pointed out in Woodmansie v. Woodmansie, 32 Ohio St. 18, and Soliday, Gdn. v. Ash, 40 Ohio App. 498, 179 N.E. 150. See Section 10507-27, General Code.

 Appellant contends that it was not a party to the litigation in the state courts and hence is not bound by the judgment there rendered. But in Ohio the surety in absence of fraud or collusion, is concluded by the determination of the probate court, whether or not it is a formal party to the settlement proceedings. Braiden v. Mercer, 44 Ohio St. 339, 7 N.E. 155. In that case the surety was not a party and was even assumed by the court to have no actual knowledge of the proceedings. Other Ohio decisions to the same effect are Slagle v. Entrekin, 44 Ohio St. 637, 10 N.E. 675; Smith v. Rhodes & Wilt, 68 Ohio St. 500, 68 N.E. 7; United States Fidelity & Guaranty Co. v. Wood, 35 Ohio App. 224, 172 N.E. 383, motion to certify overruled, 35 Ohio App. xlviii. This rule is based upon the reasoning of the Supreme Court of Ohio in Braiden v. Mercer, supra, that the sureties under the bond contract with reference to the action of the court and agree that their principal will obey its orders. Therefore the relation they assume to the court and its action makes them privy to the proceedings affecting their principal and denies them the right, even though not parties to the

settlement proceedings, to question the settlement of the principal's account by the probate court. An additional reason for overruling this contention is that appellant voluntarily appeared in the probate court, filed an answer after its demurrer was overruled, and after being defeated there, carried the case to the Court of Common Pleas for de novo trial, to the Court of Appeals, and through motion to certify, to the Supreme Court of Ohio. It thus subjected itself to the jurisdiction of the state courts and is bound by their judgment.

In the state courts, the question of Harshman's liability, not only for the funds embezzled but for reimbursement of compensation paid to him during the years that he was violating his trust (cf. In re Estate of Russell, supra, 60 Ohio App. page 388, 21 N.E.2d 604), and for interest, was fully considered and determined. This judgment of the state courts is final and conclusive upon the surety both as to defenses made by it or which could properly have been asserted in those courts. Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St. 233, 237; Swensen v. Cresop, 28 Ohio St. 668; Mengert, Trustee v. Brinkerhoff, 67 Ohio St. 472, 489, 66 N.E. 530; Rothman v. Engel, 97 Ohio St. 77, 119 S.E. 250; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263. Whether the probate court's power to open up the ninth account be regarded as jurisdictional or merely "quasi-jurisdictional," the question whether it had such power was squarely raised and determined in the earlier litigation and must be included in the issues which are foreclosed to the appellant in this action. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104.

Appellant's contention that the instant case must fail because the appellee split its cause of action against the surety by filing exceptions in the probate court which included a prayer for judgment against the surety, and later by suing the surety on the bond, must be overruled. Appellant in this connection relies upon Curtis, Admr. v. Lynch's Admrs., 19 Ohio St. 392, which holds that "the administrator de bonis non cannot maintain an action * * * against the representatives of the deceased administrator, but that he must seek his remedy, under the statute, on the administration bond of the decedent."

We think that this case is an authority in favor of the appellee, whose action herein is based on the administration bond. While appellee in its exceptions in the probate court prayed for judgment against the surety, the prayer was not a proper part of the exceptions to the account and in no way constituted a suit on the bond. The probate court entered no judgment for or against the surety and treated the prayer for such relief as surplusage. The judgments of the higher state courts, likewise, covered the liability of Harshman only. The determination of the liability of the administrator, while a prerequisite to this suit on the bond, is no part of the cause of action against the surety itself. The appellee proceeded in exact conformity with Ohio precedent of the highest authority in determining the amount due from Harshman on exceptions to his account and in filing a subsequent suit against the surety to recover the amount thus found due. Braiden v. Mercer, supra; Slagle v. Entrekin, supra; Smith v. Rhodes & Wilt, supra; United States Fidelity & Guaranty Co. v. Wood, supra.

Finally, it is contended that the surety is liable only for the amounts embezzled by Harshman and for interest from December 1939, the date of first demand upon the appellant. But the judgment of the probate court ordering reimbursement with interest, not only of the embezzled funds, but also of compensation paid to an administrator who violated his trust, is binding in this court. The surety is liable for the payment of all sums adjudicated to be due from its principal, and it is immaterial that the probate court's determination of liability was made subsequent to the death of Harshman. Section 10506-55, General Code, expressly provides that a vacancy in the trust due to death or other causes, and the appointment of a successor fiduciary "shall not affect the liability of the former fiduciary, or his sureties, previously incurred."

The judgment is affirmed.